

09/18/2009

## IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| DEBBIE EADS aka | § | Case No. 05-42356 |
| DEBORAH EADS, | § | (Chapter 7) |
| | § | |
| Debtor. | § | |
| ———————————————— | § | |
| | § | |
| LITTON LOAN SERVICING, L.L.P., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Adv. No. 07-4165 |
| | § | |
| DEBBIE EADS aka | § | |
| DEBORAH EADS, | § | |
| | § | |
| Defendant. | § | |

## <u>MEMORANDUM OPINION</u>

In this action, the disputed issue is whether a default order entered by this Court in the underlying bankruptcy case entitles Debbie Eads (the "<u>Debtor</u>") to a free house. Litton Loan Servicing, L.L.P. ("<u>Litton</u>") seeks to set aside the order pursuant to Federal Rule of Civil Procedure ("<u>Rule</u>") 60(b). The Debtor opposes Litton's Rule 60(b) request, arguing that defects in the mortgage loan documents prevent the enforcement of the lien and that the lien was not created in accordance with the Texas Constitution. The Debtor also asserts the affirmative defense of laches and counterclaims that Litton has violated the automatic stay, is in contempt of the Court's order sustaining the Debtor's claim objection, has intentionally inflicted emotional distress upon her, and has vexatiously multiplied litigation. The Debtor seeks an injunction prohibiting Litton from pursuing

any action against the Debtor's homestead and requiring Litton to file a release of lien as to the Debtor's homestead.

## I. JURISDICTION

This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §1334(b) and 28 U.S.C. §157(a).  The Court has the authority to enter a final order in this action since it constitutes a core proceeding as contemplated by 28 U.S.C. §157(b)(2)(A), (B), and (O).  This Memorandum Opinion constitutes the Court's findings of fact and conclusions of law.[1]  *See* FED. R. BANKR. P. 7052.

## II. RELEVANT BACKGROUND

In December 2002, the Debtor and her husband obtained a home equity loan from Option One Mortgage Corporation.  The Debtor's husband, Timothy Eads, executed a Home Equity Adjustable Rate Note (the "Note") dated December 23, 2002, in the original principal amount of $118,600.00.[2]  The obligation to repay the indebtedness was secured by a Deed of Trust dated December 23, 2002 (the "Deed of Trust"), which provided Option One Mortgage Corporation with a lien on the real estate and all improvements located at 2004 Travis Dr. in Plano, Texas (the "Property").  Both the Debtor and her husband signed the Deed of Trust.

Option One Mortgage Corporation properly perfected its lien and security interest in and to the Property by recording the Deed of Trust in the real property records of Collin County, Texas, on January 3, 2003.  Option One Mortgage Corporation assigned

---

[1] To the extent that any finding of fact is construed to be a conclusion of law, it is hereby adopted as such.  Likewise, to the extent any conclusion of law is construed to be a finding of fact, it is hereby adopted as such.

[2] The parties' stipulated facts, which are set forth in their Joint Pre-Trial Order, erroneously state that this document was signed by both the Debtor and her husband.

the Note and Deed of Trust to Homecomings Financial Network, Inc. ("Homecomings") pursuant to an Assignment of Deed of Trust dated January 8, 2003. Homecomings was the holder of the Note and Security Instrument at all relevant times.

Homecomings and Litton had previously entered into a Servicing Agreement dated as of March 1, 2001. Article IV of the Servicing Agreement addresses the servicing of mortgage loans. Section 4.01 generally provides that Litton "shall have the full power and authority, acting alone, to do or cause to be done any and all things in connection with such servicing and administration" of a mortgage loan. With respect to a defaulted mortgage loan, section 4.03 provides that Litton shall take such action as it deems in the best interest of Homecomings and that Litton has the right and power to foreclose on a mortgaged property in the name of Homecomings.

On January 16, 2002, the Debtor filed a voluntary petition for relief under Chapter 13 of the Bankruptcy Code.[3] The Debtor filed her schedules of assets and liabilities and her statement of financial affairs on the same day as her bankruptcy petition.[4] According to her Schedule I (Current Income of Individual Debtor(s)), the Debtor was employed as a teacher, and her total net monthly take home pay was $916.40 as of the petition date. Additionally, her non-debtor husband was working as a project manager, and his total net monthly take home pay was $4,160 as of the petition date.

In her Schedule C (Property Claimed as Exempt), the Debtor claimed her interest in the Property as exempt from her creditors under Texas law. The Debtor described the Property as her homestead, and she estimated that the current market value of the

---

[3] *See* 11 U.S.C. § 101, *et seq.*

[4] Petitioners are required to observe the official forms prescribed by the Judicial Conference of the United States when filing a voluntary petition and the accompanying lists, schedules, and statements. *See* FED. R. BANKR. P. 9009.

3

Property was $150,000.  No party in interest filed a timely objection to the Debtor's claimed exemption.  *See* FED. R. BANKR. P. 4003(b).  Accordingly, the Debtor's interest in the Property was withdrawn from the bankruptcy estate and the reach of her unsecured creditors.  *See Owen v. Owen*, 500 U.S. 305, 308 (1991) (discussing exemptions from the bankruptcy estate).

In her Schedule D (Creditors Holding Secured Claims), the Debtor listed Litton as holding an undisputed, liquidated, non-contingent secured claim against the Property in the principle amount of $116,919 as well as an arrearage claim of $18,000.  The Debtor described the Property as community property in her Schedule A (Real Property).  The Debtor stated in her Schedule F (Creditors Holding Unsecured Nonpriority Claims) that she owed $16,750 to her unsecured creditors.  In her Declaration Concerning Bankruptcy Schedules, which was attached to and filed with her bankruptcy schedules, the Debtor declared under penalty of perjury that her bankruptcy schedules were true and correct to the best of her knowledge.

On June 21, 2005, Baxter & Schwartz, P.C., acting as counsel for Litton, filed proof of Homecomings' secured claim against the Property, which the Court assigned claim number one.[5]  Counsel elected not to use Official Form 10 in setting forth the claim.[6]  According to the claim, the principal balance due under the Note was $116,919.87, and the total pre-petition arrearage was $19,805.73 as of the petition date.  Although the proof of claim did not include an address for service of notice upon

---

[5] Section 541(a)(2)(A) provides that the bankruptcy estate includes: "All interests of the debtor and the debtor's spouse in community property as of the commencement of the case that is – under the sole, equal or joint management of the debtor …."

[6] A proof of claim is "a written statement setting forth a creditor's claim" and must "conform substantially" to Official Form 10. *See* FED. R. BANKR. P. 3001(a).

Homecomings, the claim states that "the correct post office address of the claimant to which all monies and distribution checks" should be sent is "Litton Loan Servicing, Attn: Bankruptcy Department, Loan No. 11503876, 4828 Loop Central Drive, Houston, Texas 77081-2226."[7]  A summary of the amount due under the Note, a copy of the Deed of Trust, and a copy of the Assignment of Deed of Trust, among other things, were attached to the proof of claim.  The copy of the Deed of Trust and the Assignment of Deed of Trust did not bear any indication that they had been filed in the real property records of Collin County, Texas.

A second proof of claim was filed by Litton on June 29, 2005, which the Court assigned claim number two.  The second proof of claim was filed by different bankruptcy counsel and did not accurately state the amounts due and owing to Homecomings.  The parties agree that this claim was filed in error and does not have any impact on the claims and counterclaims raised in this adversary proceeding.

On August 24, 2005, Baxter & Schwartz, P.C., acting as counsel for Homecomings, filed a motion seeking relief from the automatic stay imposed by § 362(a) of the Bankruptcy Code as to the Property.  The Debtor objected to the motion on the grounds that the Property was necessary to an effective reorganization and Homecomings was adequately protected.  The Court scheduled a final hearing on Homecomings' motion to be held on October 19, 2005.  Prior to that date, the Debtor and Homecomings submitted an agreed order whereby the Debtor agreed to make regular payments to Homecomings and to cure her post-petition arrearages.  The Court entered the Agreed Order Conditioning Automatic Stay (the "Agreed Order") on November 16, 2005.

---

[7] Official Form 10 requests claimants to disclose the "[n]ame and address where notices should be sent" as well as the "[n]ame and address where payment should be sent (if different from above)."

The Agreed Order was signed by counsel for the Debtor and Homecomings and provides that its terms embody the stipulations of the parties.  The Agreed Order provided for regular payments to be made to Homecomings beginning on November 1, 2005, "pursuant to the terms of the Note, held by [Homecomings], secured by a Deed of Trust, encumbering" the Property.  The Agreed Order further provided in pertinent part that Homecomings would notify the Debtor and her counsel of any payment default and, if the Debtor failed to cure the default within ten days of the date of the notice, "the Automatic Stay of 11 U.S.C. §362 shall be and is hereby ORDERED to be terminated with respect to Movant."

The Debtor failed to perform under the Agreed Order.  Counsel for Litton sent a letter to the Debtor dated January 25, 2006, notifying the Debtor that she had defaulted under the terms of the Agreed Order by failing to make the regular monthly payments for November 1, 2005, December 1, 2005, and January 1, 2006.  Counsel for Litton sent a second letter to the Debtor dated June 2, 2006, notifying the Debtor that she had again defaulted under the terms of the Agreed Order by failing to make the regular monthly payments for February 1, 2006 through May 1, 2006.  The Debtor failed to cure the defaults described in the June 2nd letter.

The Debtor filed a First Amended Chapter 13 Plan on May 5, 2006.  In the amended plan, the Debtor provided for mortgage payments to be made to Homecomings. The Debtor, however, included the following statement in her proposed plan:  "This plan is confirmed without resolution of Debtor's pending objections to the claims of eCast and[/]or Homecomings, confirmation of the plan is not res judicata as to those claims.  At such time as the claims and objections to claims are resolved, the plan base and plan

6

payment shall be modified as appropriate to reflect the outcome of the objection to the claims." There was, at that time, no pending objection to Homecomings' claim number one or the erroneously-filed claim number two.

On August 5, 2006 (after receiving the second default letter from counsel for Litton), the Debtor filed an objection to Homecomings' proof of claim number one. In an affidavit attached to the objection, the Debtor stated: "I do not know who is the owner or holder of the Note or [D]eed of Trust that I executed with Option One. I do not know that Homecomings owns or holds my Note." The Debtor did not serve the objection on an officer or director of the claimant, Homecomings, at its corporate address. The Debtor, instead, served a copy the objection on Homecomings "c/o" its bankruptcy counsel.

In the objection, the Debtor questioned the proof attached to Litton's secured claim. Although the Debtor had previously entered into an Agreed Order with Homecomings in which she agreed to make payments to Homecomings pursuant to the Note, "held by [Homecomings], secured by a Deed of Trust, encumbering the [Property]," the Debtor asserted that Homecomings had failed to establish that it, in fact, is the owner and holder of the Note and Deed of Trust. The claim objection included the following statement in bold font: "By this objection, Debtor seeks to void the lien claimed by claimant."

The Court conducted a hearing on confirmation of the Debtor's proposed Chapter 13 plan on August 9, 2006. Following the hearing, on August 10, 2006, the Court entered an order confirming the Debtor's plan. The plan provided that the Debtor would make monthly mortgage and arrearage payments to Litton. The confirmation order, like

the proposed plan, contains the following statement:  "This plan is confirmed without resolution of Debtor's pending objections to the claims of Homecomings, confirmation of the plan is not res judicata as to those claims.  At such time as the claims and objections to claims are resolved, the plan base and plan payment shall be modified to reflect the outcome of the objection to claims."

On August 30, 2006, Litton, as the servicing agent for Homecomings, filed a document entitled "Certificate of Default and Notice of Termination of the Automatic Stay" as to the Property.  Litton stated therein that the Debtor had failed to make all payments due to Homecomings.  Accordingly, pursuant to the terms of the Agreed Order, Homecomings notified the Court and all parties-in-interest that the automatic stay had lifted as to the Property.  The Debtor did not respond to Homecomings' Certificate of Default and has not sought to vacate the Agreed Order.

Homecomings did not respond to the Debtor's objection to its claim number one.[8]  This Court's Local Bankruptcy Rule 3007(b) requires a response to be filed within 20 days and, if no response timely is timely filed, the objection may be sustained by the Court without further notice and a hearing.  Based on Homecomings' failure to respond to the Debtor's objection to claim number one, on September 1, 2006, the Court entered the proposed default order submitted by counsel for the Debtor with the objection (the "September 1st Default Order").[9]

---

[8] The parties' stipulated facts, which are set forth in their Joint Pre-Trial Order, erroneously state that the objection was set for hearing.  The Court's docket sheet does not reflect that any hearing was scheduled or held.

[9] This Court relies upon a proposed order system due to the voluminous number of orders entered in any given period.  The Court makes every effort to police the proposed orders submitted by counsel and, to simplify its task, has created Local Forms for counsel to use in routine matters such as claims objections.  The system works very well in most cases.  However, in this case, counsel for the Debtor did not use the

8

The Court stated on the record at trial and the Court finds, as a matter of fact, that it erred in entering September 1st Default Order.  Among other deficiencies, the objection had not been properly served to the extent it sought to avoid Homecomings' lien pursuant to § 506(d) of the Bankruptcy Code and Bankruptcy Rule 7001(2) and, therefore, should not have been granted.  *See* FED. R. BANKR. P. 7004(b)(3) (providing for service on a corporation by first class mail to the attention of "an officer, a managing or general agent, or to any other agent authorized by appointment or by law to receive service of process ….").  Further, the September 1st Default Order did not substantially conform with this Court's Local Form 3007 as required by Local Bankruptcy Rule 3007(a)(4).  The September 1st Default Order went far beyond what is permissible in the context of a default order sustaining a claim objection, as discussed more fully below, by ordering that Litton's lien on the Property "is void."

In January 2007, the Debtor's case was converted to a case under Chapter 7 of the Bankruptcy Code.  Counsel for Litton sent a demand letter dated January 9, 2007, to the Debtor's husband for the more than $46,000 in mortgage payments that were past due at that time.  Litton filed a judicial foreclosure application against the Property on January 25, 2007, in state district court, and the state district court entered a default judgment in favor of Litton.[10]

On February 8, 2007, Litton's present counsel, Brice, Vander, Linder & Wernick, P.C., filed another motion for relief from the automatic stay.  According to Litton, its present counsel was unaware that Litton had already received relief from the stay

---

Court's Local Form 3007 and, instead, created her own order sustaining the Debtor's objection to claim number one, the terms of which the Court misunderstood.

[10] Litton's collection letters erroneously stated that it was acting as servicer for Residential Funding Corporation.

pursuant to the Agreed Order because the file it had received from prior counsel was incomplete.  The Debtor objected to the motion by raising many of the claims that she has raised in this adversary proceeding.  The Court scheduled a hearing on the motion for relief from the stay to be held on April 10, 2007.  Prior to the hearing, on April 9, 2007, Litton filed a written response to the Debtor's objection in which Litton argued that due process required the Debtor to initiate an adversary proceeding in order to avoid its lien on the Property.  At the hearing on April 10, 2007, counsel for Litton appeared and withdrew the pending motion for relief from the stay.  The Debtor did not object to the withdrawal or seek a hearing on any of the claims she raised in response to Litton's motion for relief from the stay.

The Debtor testified at trial that she believed the September 1st Default Order meant that "the house was ours," which "felt wonderful."  She testified that she was "surprised" to receive foreclosure notices from Litton in January 2007.  She testified that, after receiving the foreclosure notices, she wanted to negotiate the terms of the Note to modify it from an adjustable rate mortgage to a fixed rate mortgage.  She testified that the ongoing dispute with Litton has caused tension in her relationship with her husband, that she has cried "numerous times," and that both she and her husband have gained weight.

Litton, acting as the servicer for Homecomings, initiated this adversary proceeding on September 21, 2007 – more than a year after the entry of the September 1st Default Order and approximately six months after becoming aware of the Debtor's position that the September 1st Default Order had given her a free house.  In its adversary complaint, Litton sought a declaratory judgment as to the validity of Homecomings' lien on the Property.  The Debtor responded in opposition.  The Court conducted a trial on

10

January 15, 2009, and, following the conclusion of the trial, took this matter under advisement in order to prepare a detailed written ruling.

### III. DISCUSSION

Prior to trial, the Court entered the Joint Pre-Trial Order prepared by the parties. In the Joint Pre-Trial Order, the parties dispute whether Litton is estopped from establishing that it is the servicer for Homecomings and whether grounds exist to vacate the September 1st Default Order pursuant to Rule 60(b).  The Debtor argues that, in any event, Homecomings' lien on the property is invalid under Texas law and should be avoided based on Homecomings' failure to respond to the Debtor's objection to claim number one.  The Debtor also asserts the affirmative defenses of res judicata (based on the September 1st Default Order) and laches (based on the alleged delay in initiating this adversary action).  Finally, the Debtor seeks damages and attorneys' fees from Litton based the filing of the second motion for relief from the stay and the state court foreclosure action, claiming that (1) Litton's actions violated the automatic stay; (2) Litton's actions were in contempt of the September 1st Default Order; (3) Litton intentionally inflicted emotional distress upon the Debtor; and (4) Litton vexatiously multiplied litigation.

### A. Litton's Standing as a Party in Interest

As a threshold matter, the Debtor seeks to prevent Litton from establishing that it is acting as the servicer for Homecomings.  The Debtor's argument is based on judicial estoppel, which the Debtor has the burden to establish.  *See* FED. R. CIV. P. 8(c).  There is no dispute that Litton stated in the state court foreclosure action that it was acting as the servicer for Residential Funding Corporation.  Litton admits that Residential Funding

Corporation was not and is not, in fact, the owner and holder of the Note and Deed of Trust relating to the Property.  In the parties' Joint Pre-Trial Order, the Debtor argues that Litton's erroneous statements in the state court foreclosure action judicially estop it from establishing that it is acting on behalf of Homecomings in connection with the Debtor's bankruptcy case.

"The doctrine of judicial estoppel prevents a party from asserting a position in a legal proceeding that is contrary to a position previously taken in the same or some earlier proceeding."  *See, e.g., Ergo Science, Inc. v. Martin*, 73 F.3d 595, 598 (5th Cir. 1996) (citations omitted).  In the Fifth Circuit, three requirements are necessary for the application of judicial estoppel: (1) the party's current position must be clearly inconsistent with his previous position; (2) the court must have accepted the previous position; and (3) the non-disclosure must not have been inadvertent.  *See Superior Crewboats, Inc. v. Primary P&I Underwriters (In re Superior Crewboats, Inc.,* 374 F.3d 330, 335 (5th Cir. 2004).  "[D]etrimental reliance by the party opponent is not required." *Id.* at 334.

The "contrary position" cited by the Debtor is Litton's misidentification of the mortgage holder as Residential Funding Corporation in connection with the state court foreclosure action.  This representation was not clearly inconsistent with prior representations to the state court inasmuch as mortgages may be assigned, and a servicer such as Litton may be employed by a number of different mortgage holders.  Moreover, the Debtor has not shown that the misidentification of the mortgage holder was deliberate.  Litton's representations to this Court have consistently reflected that it is the servicer for Homecomings.

The Court finds and concludes, based on the record before it, that the Debtor has failed to establish that Litton's representations to the state district court were clearly inconsistent with its position now in this Court. The Court further finds and concludes that the Debtor has failed to establish the third element required for judicial estoppel, to wit, that the non-disclosure must not have been inadvertent. The Court, therefore, concludes that Litton is not judicially estopped from establishing that it is acting as the servicer for Homecomings in connection with the Debtor's bankruptcy case. Indeed, if the doctrine of judicial estoppel is implicated in this proceeding at all, then the Debtor should be barred from contradicting her prior representation in the Agreed Order that Homecomings is the holder of the Note and Deed of Trust – a representation upon which the Court relied in entering the Agreed Order.[11] It was only after the Debtor defaulted under the Agreed Order that she questioned Homecomings' interest in the Property by objecting to its proof of claim.

The Debtor's argument that Litton should be judicially estopped from establishing that it is acting as the servicer for Homecomings is also troubling in the procedural sense. The original lien holder, Option One Mortgage Corporation, has not participated in the Debtor's bankruptcy case or in this adversary proceeding. Homecomings is not a party to this adversary proceeding except through Litton.[12] The Debtor has not explained how her

---

[11] The doctrine of equitable estoppel, had the Debtor raised this argument in the Joint Pre-Trial Order, has no application to this case inasmuch as the Debtor has shown no justifiable reliance or change in her position based on Litton's erroneous statements in the state court foreclosure proceeding that it was acting as the servicer for Residential Funding Corporation. *See, e.g., Home Ins. Co. v. Matthews,* 998 F.2d 305, 309 n. 14 (5th Cir. 1993) (setting forth the three elements of an equitable estoppel: "(1) a representation by conduct or words; (2) justifiable reliance; and (3) a change of position to one's detriment because of the reliance.") (citation omitted).

[12] Many courts have held that a mortgage servicer has standing to participate in a debtor's bankruptcy case by virtue of its pecuniary interest in collecting payments under the terms of the note and mortgage. *See In re Tainan,* 48 B.R. 250, 252 (Bankr. E.D. Pa. 1985) (mortgage servicer a party in interest

counterclaims against Litton could possibly result in the invalidation of the lien against the Property if, as she argues, Homecomings does not hold the mortgage and Litton is not acting as the authorized agent for Homecomings.

### B. The Claims Allowance Process

At the time the Debtor filed her objection to Homecomings' claim, Bankruptcy Rule 3007 provided as follows:

> An objection to the allowance of a claim shall be in writing and filed. A copy of the objection with notice of hearing thereon shall be mailed or otherwise delivered to the claimant, the debtor or debtor in possession and the trustee at least 30 days prior to the hearing. *If an objection to a claim is joined with a demand for relief of a kind specified in Rule 7001, it becomes an adversary proceeding.*

FED. R. BANKR. P. 3007 (Emphasis added).[13]  Bankruptcy Rule 7001(2), in turn, provides that an adversary proceeding is required for an action challenging the validity, priority or extent of a lien.  Thus, if a debtor's objection to a secured claim is combined with a challenge to the lien, an adversary proceeding is required.  *See In re Kleibrink*, 346 B.R. 734, 749 (Bankr. N.D. Tex. 2006).

In this adversary proceeding, the Debtor argues that the Court should find that her objection to claim number one in the main bankruptcy case became an adversary proceeding by virtue of Bankruptcy Rule 3007.  This argument makes a distinction

---

for purposes of FED. R. CIV. P. 17(a) in a relief from stay proceeding.); *Bankers Trust (Delaware) v. 236 Beltway Inv.,* 865 F.Supp. 1186, 1191 (E.D. Va. 1994) (both lender and servicer have standing to foreclose even if servicer is not the holder of the mortgage); *Greer et al. v. O'Dell (In re O'Dell),* 268 B.R. 607, 618 (N.D. Ala. 2001) (A servicer was allowed to defend a proof of claim on behalf of its principal), aff'd, 305 F.3d 1297, 1302 (11th Cir. 2002) ("A servicer is a party in interest in proceedings involving loans which it services"); *In re Miller,* 320 B.R. 203, 206 n. 2 (Bankr. N.D. Ala. 2005) (servicer permitted to litigate motion for relief from stay); *In re Woodberry,* 383 B.R. 373, 379 (Bankr. D. S.C. 2008) (a loan servicer, with a contractual duty to collect payments and foreclose mortgages in the event of default, has standing to move for relief from stay in the bankruptcy court).

[13] In 2007, Bankruptcy Rule 3007 was substantially amended.  Among other changes, Bankruptcy Rule 3007(b) now provides that a demand for relief requiring an adversary proceeding may not be included in an objection to claim.

without a difference.  Whether an adversary complaint must be filed to commence an adversary proceeding or whether a claims objection automatically morphs into an adversary proceeding by virtue of Bankruptcy Rule 3007, the parties are entitled to all the procedural safeguards set forth in Bankruptcy Rules 7001 – 7071.  Part VII of the Bankruptcy Rules establishes a procedure for "adversary proceedings," much like the procedure applicable to trials under the Federal Rules of Civil Procedure.  One of the underlying purposes of Bankruptcy Rule 7001(2), as incorporated into the claims objection process by Bankruptcy Rule 3007, is to afford the creditor sufficient notice that it may be deprived of an interest in property.  *See, e.g., Hamlet v. Ocwen Federal Bank, FSB,* 286 B.R. 835, 838 (Bankr. W.D. Va. 2002) (due process requires notice sufficient to apprise interested parties of the pendency of an action and afford them an opportunity to object) (citing *Piedmont Trust Bank v. Linkous (In re Linkous),* 990 F.2d 160, 162 (4th Cir. 1993)).

The Debtor in this case admittedly failed to follow the procedural rules applicable to adversary proceedings – including the rules regarding service of process – with respect to her objection to Homecomings' claim.  The certificate of service attached to the Debtor's objection reflects that her counsel served the objection on Homecomings "c/o Baxter & Schwartz, P.C." pursuant to Local Bankruptcy Rule 3007(a)(3).  Service of an adversary complaint, however, is accomplished by mailing a copy of a summons and the complaint to "an officer, a managing or general agent, or to any other agent authorized by appointment or by law to receive service of process…."  *See* Fed. R. Bankr. P. 7004(b)(3).  Any request made by Homecomings' counsel for notice in the main case pursuant to Bankruptcy Rule 9010(b) did not alter or substitute for the requirement that

15

an adversary complaint and summons must be served as required by the Bankruptcy Rules. *See In re Lomas Financial Corp.,* 212 B.R. 46, 54 (Bankr. D. Del. 1997) (holding that service of a claim objection must be served on creditor's counsel as well as creditor where counsel has filed a notice of appearance). Bankruptcy proceedings differ significantly from litigation in non-bankruptcy civil litigation, and general notice in the main bankruptcy case is different from service of an adversary complaint. *See Conseco Fin. Serv. Corp. v. Rushton (In re Rushton)*, 285 B.R. 76, 79 (Bankr. S.D. Ga. 2002); *Boykin v. Marioot Int'l, Inc. (In re Boykin)*, 246 B.R. 825, 829 (Bankr. E.D. Va. 2000).

The Debtor argues that Litton and Homecomings have waived any argument that Homecomings' due process rights were violated by her alleged failure to comply with the procedural requirements of an adversary proceeding, because Litton withdrew the second motion for relief from the stay after receiving the Debtor's objection to the motion. The Debtor, however, failed to explain how the due process rights of Litton and/or Homecomings were properly before the Court in connection with Litton's motion for relief from stay. Litton has brought this issue as well as its claims for equitable relief from the September 1st Default Order, among other things, before this Court through this adversary proceeding. *See* FED. R. BANKR. P. 7001(7) (specifying that "a proceeding to obtain an injunction or other equitable relief" is an adversary proceeding). *See also State Bank of Southern Utah v. Gledhill (In re Gledhill),* 76 F.3d 1070) (holding that Bankruptcy Rule 7001(7) does not preclude the use of Rule 60(b) to obtain relief by motion).

In light of the clear procedural requirements for avoiding a lien, *see* FED. R. BANKR. P. 3007 and 7001(2), and in light of the special protections afforded a creditor

with a secured interest in a debtor's home, *see* 11 U.S.C. § 1322(b)(2), the Court finds and concludes that the Debtor did not give Homecomings adequate notice of her intent to eliminate its lien on her homestead through the claims objection process.  As discussed more fully below, a debtor may not use the relatively relaxed procedures applied in contested matters to deny a creditor its right of due process under the applicable Bankruptcy Rules.  *See Cen-Pen Corp. v. Hanson,* 58 F.3d 89, 93 (4th Cir. 1995) ("confirmation of a ... plan is res judicata only as to issues that can be raised in the less formal procedure for contested matters ... confirmation generally cannot have [a] preclusive effect as to [matters] which must be raised in an adversary proceeding.").  Even if the Debtor's claim objection "somehow became an adversary proceeding," the Debtor cannot prevail because "*none* of the adversary proceeding procedural rules were followed."  *In re Kleibrink*, 346 B.R. at 743 (emphasis in original).

### C. The September 1st Default Order

The filing of a proof of claim is analogous to the filing of a complaint in a civil action, with the bankrupt's objection the same as the answer.  *See In re Simmons,* 765 F.2d 547, 552 (5th Cir. 1985) (citing *Nortex Trading Corp. v. Newfield,* 311 F.2d 163, 164 (2nd Cir. 1962)).  Thus, sustaining the Debtor's objection to Homecomings' secured claim and avoiding Homecomings' lien was akin to a default judgment in favor of the Debtor. *See Cruz v. Educ. Credit Mgmt. Corp. (In re Cruz)*, 277 B.R. 793, 796 (Bankr. M.D. Ga. 2000).  The Fifth Circuit views default judgments with disfavor: "Default judgments are a drastic remedy, not favored by the Federal Rules and resorted to by the courts only in extreme situations."  *Sun Bank of Ocala v. Pelican Homestead & Sav. Ass'n*, 874 F.2d 274, 276 (5th Cir. 1989).  The Fifth Circuit has adopted a policy in favor of resolving

cases on their merits and against the use of default judgments." *Rogers v. Hartford Life and Acc. Ins. Co.*, 167 F.3d 933, 936 (5th Cir. 1999).

A bankruptcy court's allowance or disallowance of a proof of claim is a final judgment. *See, e.g., Poonja v. Alleghany Props. (In re Los Gatos Lodge, Inc.),* 278 F.3d 890, 894 (9th Cir. 2002) (quoting *Siegel v. Fed. Home Loan Mortgage Corp.,* 143 F.3d 525, 529-30 (9th Cir. 1998)). However, "[f]or res judicata to apply, four requirements must be met: (1) the parties must be identical in both suits; (2) the prior judgment must have been rendered by a court of competent jurisdiction; (3) there must be a final judgment on the merits; and (4) the same cause of action must be involved in both cases."[14] *Meza v. General Battery Corp.,* 908 F.2d 1262, 1265 (5th Cir. 1990). A claim that is allowed or disallowed based on a party's inaction is not, in fact, litigated or decided upon the merits. *See Colley v. Nat'l Bank of Texas (In re Colley),* 814 F.2d 1008, 1010 (5th Cir. 1987) (discussing the standards for reconsideration of a claim). Thus, a default order sustaining a debtor's claim objection generally is not entitled to preclusive effect. *See, e.g., In re Cruz*, 277 B.R. at 796 (holding that an order sustaining an objection to a creditor's claim based on the creditor's lack of response did not have preclusive effect in a subsequent adversary proceeding). Moreover, if an issue must be raised through an adversary proceeding, courts have generally held that it is not part of the contested matter, and, unless it is actually litigated in the contested matter, an order entered in the contested matter will not have preclusive effect. *See, e.g., In re Hanson,* 397 F.3d 482, 486 (7th Cir. 2005) (holding that student loans may not be discharged

---

[14] In the Fifth Circuit, collateral estoppel (issue preclusion) applies when (1) the issue at stake in the pending litigation is the same as the issue in the initial litigation, (2) *the issue was actually litigated*, and (3) the determination of the issue in the initial litigation was a necessary part of the judgment. *Pace v. Bogalusa City Sch. Bd.,* 403 F.3d 272, 290 (5th Cir. 2005) (emphasis added).

through a declaration of "undue hardship" in a Chapter 13 plan); *Cen-Pen Corp. v. Hanson,* 58 F.3d 89, 93 (4th Cir. 1995) ("confirmation of a ... plan is res judicata only as to issues that can be raised in the less formal procedure for contested matters ... confirmation generally cannot have [a] preclusive effect as to [matters] which must be raised in an adversary proceeding."); *Sun Finance Company v. Howard (In re Howard),* 972 F.2d 639 (5th Cir. 1992) (holding that a Chapter 13 plan which purports to reduce or eliminate a creditor's secured claim is res judicata as to that creditor only if the debtor has put the creditor on notice that it must participate in the plan confirmation process by filing an objection to the creditor's claim).

Even if res judicata applied to the September 1st Default Order, the doctrine bars a *collateral* attack on a final judgment, but it does not bar a *direct* attack. *See Watts v. Pinckney,* 752 F.2d 406, 410 (9th Cir. 1985); *In re Acorn Hotels, LLC,* 251 B.R. 696, 700 (Bankr. W.D. Tex. 2006). Rule 60(b) "provides a procedure whereby, in appropriate cases, a party may be relieved of a final judgment." *See Liljeberg v. Health Serv. Acquisition Corp.,* 486 U.S. 847, 863 (1988). Bankruptcy Rule 9024 generally incorporates Rule 60 into all matters governed by the Bankruptcy Rules, except "the reconsideration of an order allowing or disallowing a claim against the estate entered without a contest is not subject to the one year limitation prescribed in Rule 60(b)...." FED. R. BANKR. P. 9024.[15] Section 502(j) of the Bankruptcy Code and Bankruptcy Rule

---

[15] Although an objection to a claim initiates a "contested matter," as previously discussed, the phrase "contested matter" is not synonymous with "contest" as that term is used in Bankruptcy Rule 9024. "Contest" in the context of Bankruptcy Rule 9024 generally means "litigation." *See, e.g., In re Colley,* 814 F.2d at 1010 ("We interpret Rule 9024 to provide that, when a proof of claim has in fact been litigated between parties to a bankruptcy proceeding, the litigants must seek reconsideration of the bankruptcy court's determination pursuant to the usual Rule 60 standards if they elect not to pursue a timely appeal of the original order allowing or disallowing the claim."). If "contest" where synonymous with contested matter, then the quoted language in Bankruptcy Rule 9024 would have little, if any, real meaning since orders sustaining or overruling a claim objection would always be the product of a "contest."

3008 likewise provide that the Court may reconsider "for cause" a claim that has been allowed or disallowed. *See* 11 U.S.C. § 502(j); FED. R. BANKR. P. 3008.

Here, Litton has invoked Rule 60(b) as support for its argument that the September 1st Default Order should be vacated.[16]  A Rule 60(b) motion is not a substitute for an appeal of the underlying judgment, *see Travelers Ins. Co. v. Liljeberg Enter., Inc.,* 38 F.3d 1404, 1408 (5th Cir. 1994), and a Rule 60(b) motion must be based on one of six grounds cited in the rule, such as mistake, newly discovered evidence, or fraud. *See* FED. R. CIV. P. 60(b).  With regard to Rule 60(b)(6), which authorizes a court to relieve a party from a final judgment for "any ... reason justifying relief" other than a ground covered by clauses (b)(1) through (b)(5) of the rule, relief under this subsection is appropriate only in an "extraordinary situation," *Klapprott v. United States,* 335 U.S. 601, 613 (1949), or "if extraordinary circumstances are present," *Batts v. Tow-Motor Forklift Co.,* 66 F.3d 743, 747-48 (5th Cir. 1995) (quoting *Bailey v. Ryan Stevedoring Co.,* 894 F.2d 157, 160 (5th Cir. 1990).  Pertinent to a motion for relief from a default judgment under Rule 60(b), the Fifth Circuit has instructed courts to consider the extent of prejudice to the plaintiff, the culpability of the defendant's conduct, and the merits of the defendant's asserted defense. *See United States v. One 1978 Piper Navajo PAA-31 Aircraft,* 748 F.2d 316, 318-19 (5th Cir. 1984); *Rogers v. Hartford Life & Accident Ins. Co.,* 167 F.3d 933, 938 (5th Cir. 1999); *Warfield v. Byron*, 436 F.3d 551, 556 (5th Cir. 2006).

Litton's asserted defense in this proceeding is that Homecomings' due process

---

[16] The Debtor's underlying bankruptcy case was closed on September 30, 2008 for administrative purposes.  *See* 11 U.S.C. § 350(a); FED. R. BANKR. P. 5009.  However, a bankruptcy court may, at its discretion, chose to reopen a case pursuant to § 350(b) of the Bankruptcy Code and reconsider a claim under § 502(j).  Many courts, including the Fifth Circuit, have likened the "cause" standard set forth in § 502(j) with the substantive requirements of Rule 60(b).  *See In re Coffman,* 271 B.R. 492, 498 (Bankr. N.D. Tex. 2002) (collecting cases).

rights were violated by the Debtor's improper use of the claims objection process to obtain an order purporting to invalidate its lien. The Debtor did not file an objection to Homecomings' claim number one until the eve of the hearing on confirmation of her Chapter 13 plan – long after the deadline for objecting to confirmation had passed. Although the objection stated that the Debtor was seeking avoidance of Homecomings' lien, the Debtor did not initiate an adversary proceeding or, as previously discussed, follow any of the procedural rules required for adversary proceedings.

As the Supreme Court has explained, due process entitles creditors to the heightened notice provided for by the Bankruptcy Code and Rules. *See Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 314 (1950) ("An elementary and fundamental requirement of due process in any proceeding which is to be afforded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."). Homecomings justifiably relied on the explicit requirement in the Bankruptcy Rules that a lien may not be avoided except through an adversary proceeding, *see* FED. R. BANKR. P. 7001(2), and that an adversary complaint must be served upon "an officer, a managing or general agent, or to any other agent authorized by appointment or by law to receive service of process," *see* FED. R. BANKR. P. 7004(b)(3). Due process requires "notice and the opportunity for hearing appropriate to the nature of the case" prior to deprivation of property rights. *See Mullane,* 339 U.S. at 313. *See also In re Hanson*, 397 F.3d 482, 486-87 (7th Cir. 2005) (where order purporting to discharge Chapter 13 debtor of his student loan debt was erroneously entered, student loan creditor was entitled to relief from discharge order on theory that it was void as having been

entered in derogation of its due process rights).  Homecomings did not receive such notice prior to the entry of the September 1st Default Order.

With respect to the Debtor's defense of laches, the Debtor appears to argue, among other things, that the doctrine of laches prevents this Court from reviewing or correcting the September 1st Default Order pursuant to Rules 55 or 60.  The term "laches" is commonly defined as an inexcusable delay that results in prejudice to the defendant. *See Conan Properties, Inc. v. Conans Pizza, Inc.,* 752 F.2d 145, 153 (5th Cir. 1985). Laches comprises three elements: (1) delay in asserting one's rights, (2) lack of excuse for the delay, and (3) undue prejudice caused by the delay.  *See Elvis Presley Enters., Inc. v. Capece,* 141 F.3d 188, 205 (5th Cir. 1998).  Laches, as the parties acknowledge in their Joint Pre-Trial Order, is an affirmative defense, and the party asserting it has the burden of proof.  *See, e.g., Matter of Bohart*, 743 F.2d 313, 326 n. 13 (5th Cir. 1984).

A finding of prejudice requires more than simply delay in bringing an action.  *See Environmental Def. Fund, Inc. v. Alexander,* 614 F.2d 474, 479 (5th Cir. 1980) ("Measuring prejudice entails balancing equities.").  There must be a delay which causes a disadvantage in asserting and establishing a claimed right or defense.  *See Esso Int'l, Inc. v. The SS Captain John,* 443 F.2d 1144, 1150 (5th Cir. 1971).  Here, the Debtor failed to show any such prejudice.  Rather, for several years, the Debtor and her non-debtor husband have enjoyed living on the Property without making mortgage payments to Homecomings as required by the Agreed Order and the Note.

For all the foregoing reasons, the Court concludes that good cause exists for setting aside the September 1st Default Order.  *See Harper Macleod Solicitors v. Keaty & Keaty,* 260 F.3d 389, 393 (5th Cir. 2001) (a court must set aside a default as void "if it

determines that it lacked personal jurisdiction over the defendant because of defective service of process."). The Court further concludes that extraordinary circumstances are present and that grounds exist to vacate its September 1st Default Order pursuant to Rule 60(b)(6). Litton and its former counsel reasonably relied upon the Agreed Order in initiating a foreclosure action in state court. Setting aside the September 1st Default Order does not prejudice the Debtor, and it allows the Court to consider Litton's meritorious arguments regarding the validity of Homecomings' lien.

### D. The Validity of Homecomings' Lien on the Property

The Debtor raises a two-pronged challenge to the validity of Homecomings' lien on the Property in her response to Litton's adversary complaint. In response to Litton's request for a declaratory judgment regarding the validity of Homecomings' lien, the Debtor argues that the "defects in the loan documents/chain of title" prevent Homecomings from enforcing its alleged lien on the Property under Texas law. Second, the Debtor argues that the proof of claim filed by Homecomings failed to establish that the Note and Deed of Trust have been transferred to Homecomings or that Litton was authorized to file the proof of claim for Homecomings. Thus, the Debtor asserts that Homecomings' lien is invalid and unenforceable by operation of the bankruptcy claims allowance process.

### 1. The Texas Constitution

Turning to the Debtor's substantive objection to Homecomings' lien, the Debtor invokes article XVI of the Texas Constitution in the Joint Pre-Trial Order.[17] Section 50(a) of article XVI of the Texas Constitution sets forth the types of loans or extensions

---

[17] The Debtor did not address this counterclaim at trial or in closing arguments. The Court addresses it in this Memorandum Opinion out of an abundance of caution.

23

of credit that may be secured by a borrower's homestead.  For example, subsection (a)(1) allows a lien that secures purchase money, and subsection (a)(4) allows a lien that secures the refinance of an existing lien against a homestead.  Any lien on a homestead other than the permitted types is invalid under the Texas Constitution.  Subsection (a)(6), which was enacted in 1997, provides that a borrower's homestead is generally protected from home equity loans except those which satisfy numerous requirements.

The numerous requirements that must be satisfied by a lender in order to create a valid lien securing a home equity loan were designed to protect homeowners from predatory lenders.  *See Rooms With a View, Inc., et al. v. Private Nat'l Mortgage Ass'n*, 7 S.W.3d 840, 847 (Tex. App. – Austin 1999, pet. den.).  The failure to comply with all the requirements of (a)(6) for obtaining a valid homestead lien, however, is not necessarily fatal to a home equity lender.  Section 50(a)(6) provides a lender an opportunity to cure any non-compliance.  Section 50(a)(6) provides in pertinent part that:

> [T]he lender or any holder of the note for the extension of credit shall forfeit all principal and interest of the extension of credit if the lender or holder fails to comply with the lender or holder's obligations under the extension of credit and fails to correct the failure to comply not later than the 60th day after the date the lender or holder is notified by the borrower of the lender's failure to comply by:….(f) if the failure to comply cannot be cured under Subparagraphs(x)(a)-(e) of this paragraph, curing the failure to comply by a refund or credit to the owner of $1,000 and offering the owner the right to refinance the extension of credit with the lender or holder for the remaining term of the loan at no cost to the owner on the same terms, including interest, as the original extension of credit with any modifications necessary to comply with this section or on terms on which the owner and the lender or holder otherwise agree that comply with this section…." "

TEX. CONST. art. XVI, § 50(a)(6)(Q)(x).

Here, the Debtor failed to articulate legal or factual grounds for concluding that the Note and Deed of Trust did not create a valid lien against the Property under Texas

24

law.   The Debtor further failed to show that she took reasonable steps to notify Homecomings or its predecessor-in-interest of any alleged failure to comply with the Texas Constitution or that she provided Homecomings or its predecessor-in-interest with a description of any alleged failure to comply.   *See* TEX. CONST. art. XVI, § 50(a)(6)(Q)(x); 7 TEX. ADMIN. CODE §153.91 (effective November 11, 2004); *Curry v. Bank of Am., N.A.,* 232 S.W.3d 345, 354 (Tex. App. -- Dallas 2007, no pet.) (looking to §153.91 as instructive and holding letter that lacked factual details was inadequate notice of an alleged violation of §50(a)(6)).   The Court, therefore, concludes that any objection to the validity of Homecomings' lien should be denied to the extent the objection is based on article XVI of the Texas Constitution.

### 2. The Debtor's Objection to Homecomings' Claim

In the underlying bankruptcy case, the Debtor objected to the allowance of Homecomings' secured claim on two grounds.   First, the Debtor objected to Homecomings' failure to provide a payment history supporting its calculation of the amount of the claim.   Second, the Debtor objected to Homecomings' failure to attach file-stamped copies of the Deed of Trust and the Assignment of Deed of Trust.   The Debtor, therefore, requested that Homecomings' lien be declared void and that its claim be disallowed in its entirety.   In the parties' Joint Pre-Trial Order, the Debtor added a new objection, specifically, that "defects in the loan documents/chain of title prevent Litton/Homecomings from enforcing any lien against Ms. Eads homestead, in that the Note has not been transferred to Homecomings in accordance with the requirements of the Texas Business and Commerce Code."

A Chapter 11 debtor has the powers of a bankruptcy trustee, *see* 11 U.S.C. § 1107(a), including the power to avoid unperfected liens pursuant to § 544(a)(1) of the Bankruptcy Code.  In a Chapter 7 or 13 case, in contrast, a debtor may only assert the trustee's avoiding powers, including § 544(a)(1), in order to preserve exemptions, and the debtor's avoiding capacity is limited to liens that were not voluntarily granted by the debtor.  *See* 11 U.S.C. § 522(h); *In re Hamilton*, 125 F.3d at 297; *In re Elam*, 194 B.R. 412, 415 (Bankr. E.D. Tex. 1996).  *See generally* 14A COLLIER ON BANKRUPTCY ¶ 544.08[4] (15th ed. rev. 2009) ("An individual debtor, regardless of the chapter under which the case is filed, may exercise section 544 avoiding powers in the limited circumstances outlined in section 522(h)") (citing the Fifth Circuit's opinion in *Hamilton*).  The Debtor in this case voluntarily granted Option One Mortgage Corporation a lien on her exempt homestead.  Since her case is not a Chapter 11 case, the Debtor may not use § 544(a) to avoid the voluntary lien on her exempt homestead based on Homecomings' alleged unperfected status.

Turning to the Debtor's remaining objections to Homecomings' claim, the burden of proof for claims objections rests on different parties at different times.  Initially, the claimant must allege facts in the proof of claim sufficient to support the claim.  *See, e.g., In re Woodmere Investors Ltd. P'ship,* 178 B.R. 346, 354-355 (Bankr. S.D. N.Y. 1995).  The claimant satisfies this burden by complying with Bankruptcy Rule 3001 and Official Form 10, which together govern the form, content and required attachments for proofs of claim.  *See* FED. R. BANKR. P. 3001(a).  With respect to a claim based on a "writing," Bankruptcy Rule 3001(c) requires that claimants must attach the original or duplicate of that writing to the proof of claim unless it has been lost or destroyed, in which case a

statement of the circumstances of the loss must be filed with the claim.  Official Form 10, complementing Bankruptcy Rule 3001, instructs claimants to attach copies of supporting documents or, if voluminous, a summary.  Official Form 10 further requires the claimant to disclose whether the claim includes "any interest or other charges in addition to the principal amount of the claim," and if so, to attach an "itemized statement of all interest or additional charges."

In this case, Homecomings' proof of claim substantially conformed to Official Form 10 as required by Bankruptcy Rule 3001(a).  Homecomings' claim number one identified its claim as a secured claim based upon the Note and Deed of Trust. Homecomings described the balance due under the Note as well as the Property securing the obligation under the Note.  Homecomings stated that "[t]he amount of all payments on this claim has been credited and deducted for the purpose of making this proof of claim" and "this claim is not subject to any setoff or counterclaim."  As proof of its claim and secured interest in the Property, Homecomings attached a copy of the Note, the Federal Truth-In-Lending Disclosure Statement (Real Estate), the Deed of Trust, and the Assignment of Deed of Trust.  Homecomings directed that all monies and distribution checks should be mailed to Litton at the address listed in the proof of claim.

Homecomings' claim, which was executed and filed in accordance with the requirements of Bankruptcy Rule 3001 and Official Form 10, constitutes "prima facie evidence of the validity and amount of the claim."   FED. R. BANKR. P. 3002(f). Bankruptcy Rule 3001(f) permits the proof of claim itself to act like a verified complaint and have an independent evidentiary effect in a hearing on an objection to the claim.  *See, e.g., In re Cluff,* 313 B.R. 323, 340-43 (Bankr. D. Utah 2004); *Garner v. Shier (In re*

27

*Garner)*, 246 B.R. 617, 622 (9th Cir. BAP 2000).  The claimant will prevail unless the objecting party produces evidence at least equal in probative force to that offered by the proof of claim and which, if believed, would refute at least one of the allegations that is essential to the claim's legal sufficiency.  *See, e.g., Lundell v. Anchor Const. Specialists, Inc. (In re Lundell)*, 223 F.3d 1035, 1041 (9th Cir. 2000); *Sherman v. Novak (In re Reilly)*, 245 B.R. 768, 773 (2nd Cir. BAP 2000).

To rebut the prima facie validity of Homecomings' proof of claim, the Debtor relies upon the affidavit she attached to her original claim objection.  The Debtor's affidavit, however, directly contradicts her bankruptcy schedules as well as the stipulations contained in the Agreed Order by stating that she does not know whether Homecomings has a lien on her Property.  The Debtor has not provided this Court with a satisfactory explanation of her contradictory statements, and the Court finds and concludes that her affidavit is unworthy of belief.  The Debtor previously stipulated that Homecomings held the lien on her home in order to prevent Homecomings from foreclosing on the Property and then, when she failed to perform under the terms of the Agreed Order, she signed the instant affidavit challenging Homecomings' lien in an effort to avoid its lien on her Property.

The Debtor's testimony at trial, like her prior affidavit, contradicted her bankruptcy schedules and the terms of the Agreed Order.  The Debtor's testimony focused on various letters she and her husband have received from Litton in an attempt to suggest that Homecomings does not hold a mortgage on her home or that Homecomings is not authorized to foreclose on her home under Texas law.  As this Court explained in *In re Leverett*, 378 B.R. 793 (Bankr. E.D. Tex. 2007), an objection to a claim based upon

28

insufficient documentation that the claimant is the current holder of the "claim is a defense that would be available to the Debtor in a suit on the claim and is, therefore, a valid basis for disallowance of a claim under §502(b)(1) of the Bankruptcy Code." *Id.* at 800 (citing *In re Taylor*, 363 B.R. 303, 309 (Bankr. M.D. Fla. 2007); *In re Tran,* 351 B.R. 440, 444 (Bankr. S.D. Tex. 2006), aff'd, 369 B.R. 312 (S.D. Tex. 2007)).

It appears from the preponderance of the evidence admitted at the trial of this adversary proceeding that, in January 2003, Option One Mortgage Corporation assigned its interest in the Note and Deed of Trust to Homecomings, and Homecomings delegated the servicing of the Note to Litton pursuant to the Servicing Agreement. It further appears that Litton is in possession of the original Note and Deed of Trust relating to the Debtor's home. *See Pierson v. SMS Financial II, L.L.C.,* 959 S.W.2d 343 (Tex. App. -- Texarkana 1998, no pet.) (assignee established that it was the owner and holder of a deed of trust note, by presenting an affidavit from its custodian of records, which was not controverted by any other evidence, and by presenting a photocopy of the note). Under these facts, the Court finds that Homecomings, as owner and holder of the Note, stands in the place of the original lender. See TEX. BUS. & COMM.CODE ANN. § 1.201(21) (defining a "holder" as "the person in possession of a negotiable instrument that is payable either to bearer or to an identified person that is the person in possession").

Notably, the general rule regarding the passage of a security with the assignment of the debt to which the security may be summarized as follows:

> An assignment of a debt ordinarily carries with it all liens and every remedy or security that is incidental to the subject matter of the assignment and that could have been used, or made available, by the assignor as a means of indemnity or payment, even though they are not specifically named in the instrument of assignment.

6 AM.JUR.2d *Assignments* § 114 (discussing collateral securities or liens) (footnotes omitted).  Texas courts have followed this rule in cases in which a mortgage or on real estate was said to "follow" the promissory note it secured.  *See West v. First Baptist Church,* 71 S.W.2d 1090, 1099 (Tex. 1934); *Pope v. Beauchamp,* 219 S.W. 447, 449 (Tex. 1920) ("The executed contract of mortgage ... is an incident of the instrument assured; and if that is negotiable and is transferred according to the law merchant, the mortgage passes with it, ipso facto, without assignment in words...."); *Perkins v. Sterne,* 23 Tex. 561, 563 (1859) ("Even in the case of a note made payable to A., or bearer, and transferable by delivery, without indorsement, any holder of such note could avail himself of the security afforded by a mortgage executed to secure its payment, because the mortgage, as an incident, would follow the note into the hands of every holder."); *Lawson v. Gibbs,* 591 S.W.2d 292, 294 (Tex. Civ. App.—Houston [14[th] Dist.] 1979, writ ref'd n.r.e.) ("The mortgage of the property is an incident of the debt; and as long as the debt exists, the security will follow the debt.").  However, if an assignee of a lien on property fails to record the assignment, a subsequent innocent purchaser of the lien who takes an assignment from the record owner and complies with recording laws may have priority.  *See* 64 TEX. JUR. 3d *Records and Recording Laws* § 136 (discussing assignments of liens).

With respect to Homecomings' calculation of the amount of its claim, Litton, whose counsel filed the claim for Homecomings, submitted a detailed account of the claim under penalty.  *See* 18 U.S.C. §§ 152 and 3571 and FED. R. BANKR. P. 9011.  The Court finds and concludes that the Debtor failed to provide this Court with probative evidence of equal force.  The Debtor's written objection lacked specificity with respect to

any error in Homecomings' accounting as did her supporting affidavit.  The Debtor simply stated in her affidavit that "there is no payment history attached to the claim and I can't verify that I have been given all credits and offsets for payments made."  Likewise, at trial, the Debtor failed to present this Court with credible evidence of any misapplied payments or any failure to provide her with all credits and offsets due under the applicable loan documents.  The Court, therefore, concludes that the Debtor's objection to Homecomings' claim number one should be overruled in its entirety.

### E. The Debtor's Counterclaim for Sanctions

In her response to Litton's adversary complaint, the Debtor asserts that Litton's second motion for relief from stay, and its initiation of this adversary proceeding, violate 28 U.S.C. § 1927.  The Debtor further asserts that Litton's adversary complaint is contemptuous of this Court's September 1st Default Order.  Thus, the Debtor argues that both Litton and its counsel should be liable to the Debtor for her attorneys' fees and costs incurred in connection with the second stay motion and this adversary proceeding.

Under the American Rule used in the federal courts, "absent statute or enforceable contract, litigants pay their own attorney's fees."  *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y,* 421 U.S. 240, 257 (1975).  Section 1927 of Title 28 creates an exception to the American Rule, as follows:

> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

28 U.S.C. §1927.  The Fifth Circuit has interpreted the requirement that an attorney's conduct must be vexatious and unreasonable as requiring evidence of bad faith, improper

motive, or reckless disregard of the duty owed to the court.  *Edwards v. Gen. Motors Corp.*, 153 F.3d 242, 246 (5th Cir. 1998).

In this case, the Court entered an Agreed Order in which the parties clearly stipulated that Homecomings held the lien on the Debtor's Property and which very clearly lifted the stay as to the Property in the event of default.  After defaulting under the terms of the Agreed Order, the Debtor filed an objection to Homecomings' claim in which she contradicted her prior representation, upon which the Court had relied in entering the Agreed Order, that Homecomings held the lien on her Property.  This contradiction is troubling and raises issues of judicial estoppel, as previously discussed, as well as possible violations of Bankruptcy Rule 9011 and 28 U.S.C. § 1927 *by the Debtor and her bankruptcy counsel*.

The Debtor was aware that she believed the Property was hers, free and clear of Homecomings' lien, as soon as the Court entered the September 1st Default Order.  The Debtor, however, did not bring this to Homecomings' attention until after Litton obtained a state court judgment of foreclosure.  When Litton's new bankruptcy counsel filed a second motion for relief from the stay (apparently unaware of the entry of the Agreed Order), the Debtor took the position that this Court had voided Homecomings' lien.  Although the Debtor responded to the second motion, the Debtor did not object to Litton's withdrawal of the motion.  *See* FED. R. BANKR. P. 9014(c) (applying FED. R. CIV. P. 41 to contested matters).  Litton initiated this action approximately five months later.

Litton's reliance on the Agreed Order in obtaining the state court judgment of foreclosure was not a willful violation of the automatic stay.  Further, Litton's actions were not contemptuous of the September 1st Default Order.  The proper procedure for

avoiding a lien on property is well known to most bankruptcy counsel, including Litton's present counsel, and Litton, like this Court, appears to have understood the September 1st Default Order as simply disallowing Homecomings' claim for purposes of distribution from the Debtor's bankruptcy estate.  The Debtor did not bring this dispute to the Court for resolution but, instead, waited for Litton to bring an adversary proceeding against her. The Court finds and concludes that, under the circumstances, the Debtor has failed to establish that counsel for Litton violated 28 U.S.C. § 1927.  The Court further finds and concludes that Litton did not intentionally inflict any emotional distress upon the Debtor by filing the second stay motion, in which the Debtor's brought her interpretation of the September 1st Default Order to Litton's attention, or by initiating this adversary proceeding requesting the Court to resolve the parties' dispute.  While the Debtor will surely be disappointed to find that her house is not, after all, free of Homecomings' lien, Litton and Homecomings did not create this extraordinary expectation and are not responsible for any stress or distress she may have suffered.

## CONCLUSION

For the foregoing reasons, the Court concludes that Litton has established grounds for vacating the September 1st Default Order pursuant to Rule 60(b)(6).  The Court further concludes that the Debtor's objection to Homecomings' claim number one should be denied, that Litton's lien against the Debtor's homestead should be declared valid, and that the Debtor's counterclaims for her attorneys' fees and for sanctions against Litton should be denied.  The Court will enter a separate judgment consistent with this Memorandum Opinion.

Signed on 9/18/2009

*Brenda T. Rhoades*          SR

HONORABLE BRENDA T. RHOADES,
UNITED STATES BANKRUPTCY JUDGE

33